Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/02/2016 09:10 AM CDT

DENNIS "DJ" NICHOLS, APPELLEE AND CROSS-APPELLANT,
v. FAIRWAY BUILDING PRODUCTS, L.P., AND ITS
WORKERS' COMPENSATION INSURER, PENNSYLVANIA
MANUFACTURERS' ASSOCIATION INSURANCE CO.,
APPELLANTS AND CROSS-APPELLEES.

___ N.W.2d ___

Filed September 2, 2016.    No. S-15-888.

1. **Workers' Compensation: Appeal and Error.** Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2014), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

2. ____: ____. Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence.

3. **Workers' Compensation: Evidence: Appeal and Error.** When testing the sufficiency of the evidence to support findings of fact made by the Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable to the successful party and the successful party will have the benefit of every inference reasonably deducible from the evidence.

4. **Workers' Compensation.** As the trier of fact, the single judge of the Workers' Compensation Court is the sole judge of the credibility of the witnesses and the weight to be given their testimony.

5. **Workers' Compensation: Appeal and Error.** Where the record presents nothing more than conflicting medical testimony, an appellate court will not substitute its judgment for that of the Workers' Compensation Court.

6. **Workers' Compensation: Evidence: Appeal and Error.** Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2014), an appellate court may modify an award of the compensation court when there is not sufficient competent evidence in the record to support the award.

7. **Workers' Compensation: Appeal and Error.** For the purposes of Neb. Rev. Stat. § 48-125 (Supp. 2015), a reasonable controversy exists if (1) there is a question of law previously unanswered by the Supreme Court, which question must be answered to determine a right or liability for disposition of a claim under the Nebraska Workers' Compensation Act, or (2) if the properly adduced evidence would support reasonable but opposite conclusions by the compensation court about an aspect of an employee's claim, which conclusions affect allowance or rejection of an employee's claim, in whole or in part.

8. **Workers' Compensation: Trial: Testimony.** When there is some conflict in the medical testimony adduced at trial, reasonable but opposite conclusions could be reached by the compensation court.

Appeal from the Workers' Compensation Court: John R. Hoffert, Judge. Affirmed as modified.

Christopher A. Sievers, of Prentiss Grant, L.L.C., for appellants.

Christa Binstock Israel, of Atwood, Holsten, Brown, Deaver & Spier Law Firm, P.C., L.L.O., for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, and Kelch, JJ.

Wright, J.

NATURE OF CASE

Fairway Building Products, L.P., and its workers' compensation insurer, Pennsylvania Manufacturers' Association Insurance Co. (collectively Fairway), appeal, and the claimant, Dennis "DJ" Nichols, cross-appeals from an award entered by the Nebraska Workers' Compensation Court in favor of Nichols. The court found that Nichols was permanently and totally disabled as a result of his workplace injury. It determined that Nichols was entitled to temporary total and temporary partial disability benefits for the periods and amounts

stipulated by the parties. In addition, it awarded permanent total disability benefits of $440.27 per week for as long as Nichols remains permanently and totally disabled, plus past and future medical benefits.

## BACKGROUND

On June 18, 2012, Nichols was operating a forklift in the course of his employment with Fairway when the hydraulic lift dock supporting the forklift collapsed, causing the forklift and Nichols to suddenly drop approximately 8 inches. Nichols sought medical treatment later that day, complaining of "piercing" midback to low-back pain that had been persistent for several hours, which he attributed to the forklift accident. An x ray was performed, which did not reveal any abnormalities. Nichols was prescribed a pain medication and was advised to limit lifting, twisting, and bending, apply ice or heat to the area, and take ibuprofen or another over-the-counter pain reliever as needed.

Nichols testified that he experienced persistent and worsening back pain over the next few months, which gradually extended into his legs and caused urinary urgency and discomfort. He testified that he continued to work through the pain, because he was involved in a child custody dispute at that time and was concerned that if were restricted from working, he would lose custody of his children.

On July 22, 2012, Nichols presented to a medical clinic reporting "sharp" abdominal pain and discomfort when urinating. Nichols testified that he was still experiencing back pain at that time, but did not know that urinary symptoms could be associated with a low-back injury. His doctor prescribed a pain medication and ordered a urinalysis, which did not show any abnormalities.

Nichols presented to a urology clinic on October 11, 2012. He reported midback and low-back pain with radiation to the abdomen and continued urinary urgency. Due to his history of kidney stones, the doctor ordered a CT scan, which showed a very small nonobstructing renal stone. The doctor noted

possible swelling in the paraspinous muscles on the left lower thoracic area of Nichols' back, and gave him a shot of medication for his pain. The doctor indicated in the report that she did not believe the kidney stone was the source of Nichols' pain, and recommended that he follow up with his primary care doctor regarding his back pain.

Nichols called to schedule an appointment that day, and he was seen the following week on October 15, 2012. The report indicates that he presented with "chronic lumbar back pain," which occurred "without any known injury." However, Nichols testified that his pain had been persistent since the work accident on June 18, 2012. He was prescribed various pain medications and instructed to follow up if his pain did not resolve.

Nichols returned to the clinic on October 24, 2012. Because his pain had continued despite treatment, the doctor ordered an MRI of his lumbar spine. The MRI confirmed multiple bulging and ruptured disks, at which point Nichols was referred to a specialist and advised not to return to work until further notice.

On November 1, 2012, Nichols was seen by a specialist at a neurological and spinal surgery clinic. The following history was noted in the report: "The patient was injured while driving a forklift at work in June 2012. . . . Since that time, the patient has had low back pain and bilateral leg tingling and numbness at times in bilateral feet. The patient states he cannot sit. His low back pain continues to worse[n]." The report further indicated that Nichols had "[l]umbar spondylosis and lumbago with disc protrusion at Lumbar 3 with superior migration on the right and Lumbar 5 with some extension to the left Sacral 1 nerve." It was not felt that surgery was the best option at that point, so Nichols was referred to another doctor for an evaluation to determine nonsurgical treatment options.

After attempting physical therapy and other nonsurgical treatments without much success, Nichols underwent surgery on November 28, 2012, to remove a large extruded disk at

L3-4. His pain improved slightly after the surgery, but it did not provide meaningful or long-lasting relief. He tried additional physical therapy and continued to take pain medications, but was still having low-back pain that radiated down his legs and into his feet. Eventually, Nichols underwent two additional surgeries with Dr. Daniel Ripa, including an anterior lumbar interbody fusion across L3-4, L4-5, and L5-S1 on June 26, 2013, and a decompression of the right L4-5 and right L5-S1 on March 19, 2014.

Ripa determined that Nichols reached maximum medical improvement on July 17, 2014, and recommended several permanent physical restrictions. He recommended that Nichols never lift more than 20 pounds and not more than 10 pounds repetitively, not lift anything below knee level or above shoulder level, and avoid bending, stooping, squatting, crouching, or climbing. Additionally, Ripa opined that Nichols would be unable to sit for more than 20 minutes at a time without the opportunity to either stand or recline, nor would he be expected to stand for more than 20 minutes at one time without the opportunity to either sit down or move about.

Nichols timely filed a workers' compensation claim for low-back and psychological injuries allegedly sustained as a result of the June 18, 2012, incident. Prior to trial, the parties stipulated that if Nichols' injuries were found to be compensable, Nichols was entitled to temporary total disability benefits for the specified time periods set forth in the "Plaintiff's Pretrial Statement" and exhibit 33.

There was conflicting evidence presented at trial regarding the issue of causation. Nichols presented evidence from Ripa, who diagnosed Nichols with numerous lumbar spine injuries and expressed his opinion, within a reasonable degree of medical certainty, that those injuries were more likely than not caused and/or permanently aggravated by the June 18, 2012, work accident.

Fairway attempted to show, through a number of previous accidents and injuries, none of which were disclosed to Ripa,

that Nichols had actually suffered from back injuries prior to the June 18, 2012, workplace incident. Fairway presented evidence that (1) Nichols was involved in a motor vehicle accident in 1994 which required treatment for his neck and midlumbar spine area; (2) Nichols was treated for back pain in December 2002 after he operated a forklift with a bouncy seat; and (3) Nichols was treated for another work-related back injury in September 2006, after he slipped and fell while stepping off a forklift. Nichols testified that he could not recall those incidents and that they did not cause him any ongoing back problems.

Fairway also retained Dr. Dennis Bozarth to examine Nichols and provide his medical opinions regarding the cause of Nichols' injuries. Upon his initial examination on November 16, 2012, Bozarth could not to a reasonable degree of medical certainty link Nichols' back pain to the accident at issue, but he did acknowledge that "the accident at work was the initiating cause of his subjective complaints of back pain." After reviewing additional records provided by Fairway in December 2012, Bozarth stated that the "records do confirm . . . Nichols' history as presented" and that "surgery was done in an attempt to relieve symptoms that, more likely than not, started from the industrial accident of June 18, 2012." However, 2 years later, in November 2014, Bozarth opined that it was very difficult to say which diagnoses/injuries were attributable to the accident, and he could not state to a reasonable degree of medical certainty that the accident caused any damage to Nichols. He concluded that, without any further documentation, he believed Nichols' June 18, 2012, accident "was an exacerbation of back pain and resolved within 12 weeks after the incident."

The compensation court found that Ripa's opinions were more persuasive than those offered by Bozarth. Regarding the evidence of prior back injuries, the court noted that they occurred 6 to 18 years prior to the accident at issue in this case and that there was no evidence they required extended

medical care or otherwise resulted in any ongoing difficulties for Nichols.

The court ultimately concluded that Nichols was permanently and totally disabled as a result of the low-back and psychological injuries he sustained during the June 18, 2012, work accident. It determined that Nichols was entitled to certain periods of temporary total and partial disability, as stipulated by the parties. The compensation court correctly listed those periods of temporary total disability to which the parties had stipulated, but miscalculated the sum of those periods to be 55.4286 weeks, rather than the actual 81.857 weeks as stipulated by the parties. In addition to the stipulated benefits, the court also awarded permanent total disability benefits of $440.27 per week for as long as Nichols remains permanently and totally disabled, plus past and future medical expenses.

Fairway timely filed a notice of appeal on September 21, 2015, but then filed a "Withdrawal of Appeal" 2 days before its initial brief was due to be filed. Before the motion to dismiss the appeal had been ruled upon, Nichols timely filed a notice of intent to cross-appeal. Pursuant to Neb. Ct. R. App. P. § 2-108(D), the case was ordered to proceed as though Nichols had been the initial appellant. Section 2-108(D) states:

> Time for Response of Appellees. A motion to dismiss filed by appellant will be submitted to the court 14 days after it is filed with the Supreme Court Clerk or after service upon opposing counsel, whichever is later. Appellee's response to the motion must be made within 14 days. Any party having a right of cross-appeal at the time the motion to dismiss is filed may, within the 14-day period provided in this rule, file a notice of intention to cross-appeal. Upon the filing of such notice, the court shall deny the motion to dismiss and shall fix a brief day for the cross-appellant. The cause shall then proceed as if the appeal had originally been perfected by the appellee who has cross-appealed.

However, as the case has been docketed, Fairway remains the appellant and cross-appellee and Nichols is the appellee and cross-appellant.

## ASSIGNMENTS OF ERROR

Fairway assigns, combined and restated, that the award was not supported by competent evidence and that the compensation court erred in relying on a medical opinion that was based on false and incomplete information.

On cross-appeal, Nichols assigns that the compensation court erred by miscalculating the number of weeks for which Nichols was entitled to temporary total disability benefits. Though not assigned as error, Nichols also claims that Fairway is subject to a 50-percent waiting-time penalty because Fairway filed an appeal with no basis in law or fact.[1]

## STANDARD OF REVIEW

[1-3] Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2014), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.[2] Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence.[3] When testing the sufficiency of the evidence to support findings of fact made by the Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable

---

[1] See Neb. Rev. Stat. § 48-125 (Supp. 2015).

[2] *Hynes v. Good Samaritan Hosp.*, 291 Neb. 757, 869 N.W.2d 78 (2015).

[3] *Id.*

to the successful party and the successful party will have the benefit of every inference reasonably deducible from the evidence.[4]

## ANALYSIS

This case presents conflicting expert opinions on whether Nichols' injuries were causally related to the workplace incident on June 18, 2012. Nichols' expert, Ripa, opined within a reasonable degree of medical certainty that Nichols' injuries were more likely than not caused and/or permanently aggravated by the June 18 work accident. Fairway's expert, Bozarth, disagreed and stated that it was very difficult to say which injuries were attributable to the accident and that he could not say to a reasonable degree of medical certainty that the accident caused any damage to Nichols.

Fairway argues on appeal that Ripa's medical opinion was unreliable because Nichols did not inform Ripa of his prior back injuries. This is essentially a foundational objection to Ripa's expert medical opinion. However, the exhibits containing Ripa's opinion were received into evidence without objection. Because Fairway did not make an objection on these grounds before the compensation court, it failed to preserve its foundational argument for our review.[5]

[4,5] As the trier of fact, the single judge of the Workers' Compensation Court is the sole judge of the credibility of the witnesses and the weight to be given their testimony.[6] Where the record presents nothing more than conflicting medical testimony, an appellate court will not substitute its judgment for that of the Workers' Compensation Court.[7] Here, the compensation court accepted Ripa's opinion and determined that

---

[4] *Swanson v. Park Place Automotive*, 267 Neb. 133, 672 N.W.2d 405 (2003).

[5] See *id.*

[6] *Id.*

[7] *Id.*

Nichols suffered a compensable work-related injury. We find no clear error in its determination.

On cross-appeal, Nichols claims that the lower court miscalculated the number of weeks for which he was entitled to temporary total disability benefits to a sum of 55.4286 weeks, when the periods stipulated by the parties actually totaled 81.857 weeks. Fairway agrees with Nichols on this point, but contends that the issue is moot because Fairway has already paid Nichols for "82.2 weeks" of temporary total disability.[8] Nichols asserts that the issue is not moot, because it could result in Fairway receiving an unintended credit against the remaining benefits due. Nichols requests that this court modify the award to correct the miscalculation.

[6] Pursuant to § 48-185, this court may modify an award of the compensation court when there is not sufficient competent evidence in the record to support the award. Both parties agree that the compensation court miscalculated the total number of weeks for which Nichols was entitled to temporary total disability benefits. The periods of temporary total disability, as stipulated by the parties, amount to a sum of 81.857 weeks, rather than the sum of 55.4286 weeks stated in the award. We agree with Nichols that such error could result in an unintended credit against the remaining benefits due, given that the award states that Fairway is entitled to a credit for benefits already paid. We therefore modify the award to reflect 81.857 weeks of temporary total disability benefits awarded.

Nichols also raises a claim for penalties under § 48-125, which authorizes a 50-percent payment for waiting time involving delinquent payment of compensation and attorney fees where there is no reasonable controversy regarding an employee's claim for workers' compensation. Nichols points to our decision in *Roth v. Sarpy Cty. Highway Dept.*,[9] holding that an employer is subject to a 50-percent waiting-time penalty if

---

[8] Brief for appellants at 9.

[9] *Roth v. Sarpy Cty. Highway Dept.*, 253 Neb. 703, 572 N.W.2d 786 (1998).

it appeals an award when there is no actual basis in law or fact for continuing to dispute the employee's claim. Fairway argues that a penalty is not warranted, because there is a reasonable controversy in this case.

[7,8] For the purposes of § 48-125, a reasonable controversy exists if (1) there is a question of law previously unanswered by the Supreme Court, which question must be answered to determine a right or liability for disposition of a claim under the Nebraska Workers' Compensation Act, or (2) if the properly adduced evidence would support reasonable but opposite conclusions by the compensation court about an aspect of an employee's claim, which conclusions affect allowance or rejection of an employee's claim, in whole or in part.[10] We have held that when there is some conflict in the medical testimony adduced at trial, reasonable but opposite conclusions could be reached by the compensation court.[11]

We find that Bozarth's opinion was sufficient to establish a reasonable controversy regarding the cause of Nichols' injuries. Therefore, we decline to award a waiting-time penalty under § 48-125.

### CONCLUSION

For the reasons set forth above, we affirm the judgment of the compensation court, but modify the award of temporary total disability to reflect a total of 81.857 weeks of temporary total disability, in accordance with the parties' stipulation.

AFFIRMED AS MODIFIED.

CONNOLLY, J., not participating.

---

[10] *Armstrong v. State*, 290 Neb. 205, 859 N.W.2d 541 (2015).

[11] See *id.*