IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


MISCHO V. CHIEF SCHOOL BUS SERV.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


JAMES MISCHO, APPELLANT,

V.

CHIEF SCHOOL BUS SERVICE, APPELLEE.


Filed September 26, 2017.    No. A-16-997.


Appeal from the Workers' Compensation Court: THOMAS E. STINE, Judge. Affirmed.

Roger D. Moore, of Rehm, Bennett & Moore, P.C., L.L.O., for appellant.

Brian D. Nolan and Leslie S. Stryker Viehman, of Nolan, Olson & Stryker, P.C., L.L.O, for appellee.


MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

BISHOP, Judge.

## I. INTRODUCTION

James Mischo appeals from an order of the Nebraska Workers' Compensation Court which dismissed his petition to modify a prior award. The compensation court concluded Mischo failed to sustain his burden to show a material and substantial change in his condition. We affirm.

## II. BACKGROUND

Mischo worked for Chief School Bus Service (Chief) as a shuttle bus driver on the University of Nebraska-Omaha campus. Mischo sustained two injuries arising out of and in the course and scope of his employment with Chief, one in 2008 and another in 2011. The 2008 injury is not relevant to this appeal. On April 11, 2011, while cleaning out his bus, Mischo slipped on the steps of the bus and fell. Medical records reflect that after this accident, Mischo reported pain that started at the base of the left side of his neck, traveled into the left shoulder, and then down the

- 1 -

front side of his forearm. He also described his left shoulder pain as achiness in the anterior shoulder area that appeared to be affected by particular movements. Additionally, he complained of headaches and tingling in his left arm in certain positions.

After treating with other doctors initially, Mischo was referred to Dr. John McClellan at the Nebraska Spine Center. On November 16, 2011, Dr. McClellan reviewed Mischo's clinical history, MRI, and symptoms. He recommended that Mischo undergo "EMGs" of both upper extremities to evaluate the C5 and C6 area. Dr. McClellan noted that if Mischo had "both C5 and C6 radiculopathies on the left then we would consider a C4-C6 fusion." On January 9, 2012, Dr. McClellan recommended that Mischo undergo "an anterior cervical decompression and fusion C4-5, C5-6 for his spondylitic foraminal stenosis and degenerative disk disease" after a carpal tunnel release surgery did not relieve Mischo's symptoms.

On January 17, 2012, Dr. McClellan performed the following: "1. Anterior cervical discectomy with decompression C4-5, C5-6. 2. Anterior plate fixation. 3. Local bone graft. 4. Extra small INFUSE bone morphogenic protein. 5. Interbody spacer." Dr. McClellan reported that Mischo tolerated the surgery well. Mischo was sent home in stable condition. The "Final Diagnosis" after this procedure was "[d]isk disease with spinal stenosis C4-5 and C5-6." During a February 20 follow up, Mischo reported that the shooting pain down his left arm had improved after the surgery.

On March 29, 2012, Dr. McClellan completed a Workers' Compensation Medical Report. On that form, he diagnosed Mischo with "cervical-spinal stenosis with Left C5/6 radiculopathy." He also opined that the fall did not aggravate or worsen Mischo's preexisting chronic lumbar back pain. Dr. McClellan finally suggested that Mischo "should reach MMI [maximum medical improvement] within 6 months['] time."

Trial on Mischo's workers' compensation claim was held April 12, 2012. Four days later on April 16, Mischo returned for a followup appointment with Dr. McClellan, at which time the doctor concluded that Mischo was at MMI for the April 2011 injury and could return to light or medium demand work. However, Dr. McClellan determined that Mischo could not return to commercial driving.

Since trial took place before there was evidence of Mischo reaching MMI, the compensation court entered an "Award" on May 9, 2012, finding that Mischo was temporarily totally disabled as a result of the April 11, 2011, incident. The court found that Mischo's fall aggravated his preexisting cervical spondylolisthesis with C5-C6 radiculopathy. The court awarded temporary total disability benefits from August 19, 2011, through April 12, 2012 (the date of trial), and continuing until Mischo reached MMI. The court acknowledged the parties' stipulation that Mischo had not yet reached MMI, and therefore did not determine loss of earning capacity or vocational rehabilitation. The order was silent on future medical benefits.

Mischo returned to Dr. McClellan on October 24, 2012. He complained of continued neck pain on his left side but noted that his arm symptoms had improved since surgery. Mischo also indicated that his headaches were not as severe as before surgery. Dr. McClellan opined that Mischo's C5-C6 level had not yet solidly healed and recommended a CT scan of C4-C6 to confirm this diagnosis.

After another trial before the workers' compensation court in November 2012, the compensation court entered a "Further Award" on December 5. The court found that Mischo reached MMI for his cervical spine injury on April 16, 2012, and that he sustained permanent restrictions and limitations arising out of the cervical spine injury. The compensation court concluded that Mischo sustained a 20-percent loss of earning capacity and that he was entitled to permanent partial disability benefits. The further award was silent on medical benefits and vocational rehabilitation.

Mischo continued to seek treatment and consultation after the December 2012 further award. Mischo returned to Dr. McClellan in June 2013. Mischo complained of neck pain on his left side, radiating pain down to the left shoulder, and pain that caused headaches. Dr. McClellan suggested a cervical CT scan to assess the status of the fusion and determine if pseudoarthrosis was causing Mischo's symptoms.

On August 7, 2013, Mischo again saw Dr. McClellan and reported continued cervical pain, primarily on his left side. Dr. McClellan reviewed the cervical CT scan and opined that the previous surgical areas, C4 to C6 had healed properly. He noted that "the patient has severe left facet hypertrophy at C6-7 which causes severe bony foraminal stenosis on the left." He then suggested "a left C7 selective nerve root block injection or C6-7 transformational injection for diagnostic purposes." Dr. Phillip Essay performed a left C7 nerve root block on August 14, 2013. Dr. Essay noted that there was evidence Mischo had a moderately large and lateral bone spur at C6-7 which likely approximated the C7 nerve root.

In October 2013, Mischo returned to Dr. McClellan for a followup appointment after the C7 injection. Mischo reported that his symptoms had been 100-percent relieved for one day, then 80-percent improved for a time, but had eventually returned to their pre-injection state. During an appointment on November 6, Dr. McClellan recommended surgery, namely "ACDF at C6-7 to restore the foramen with distraction and taking down the uncovertebral joint."

Mischo's next appointment with Dr. McClellan was on February 25, 2015, more than one year after Dr. McClellan recommended surgery for the continuing neck pain. Mischo again reported pain in his neck, left shoulder, and left arm, and paraesthesias. Dr. McClellan suggested a cervical MRI to determine the source of severe stenosis on the left and an "EMG" to determine if Mischo had developed chronic radiculopathy in his left arm.

In August 2015, Dr. McClellan completed a form titled "Workers' Compensation Medical Report." On the form, Dr. McClellan opined that Mischo's diagnosis was cervical radiculopathy secondary to the April 2011 work injury, that this condition was caused by, significantly contributed to, or aggravated by the work injury in April 2011, that Mischo would need some form of future medical care, and that Mischo should undergo a C6-7 fusion. Question 3(b) on the form asked "Do you agree that this recommendation represents a material and substantial change in circumstances since you last pronounced the patient at MMI for the accident detailed above (in that said surgery had not been recommended at that time)?" The question called for a yes or no answer. Dr. McClellan placed a check mark on "yes," but drew a line through it. In addition, Dr. McClellan wrote "I don't understand the question" next to the "yes" and "no" check mark areas. Dr. McClellan took Mischo off work again on November 5, 2015. However, Mischo testified that he continued working until the school's winter break in December 2015.

On April 6, 2016, Mischo filed a "First Amended Petition to Enforce Award and/or Modify Pursuant to [Neb. Rev. Stat.] § 48-162.01(7) (Reissue 2010) or Neb. Rev. Stat. § 48-141 [(Reissue 2010)]." Mischo pled that he was in need of additional medical treatment because of his work injury and that Chief refused to authorize the additional treatment. He sought relief under § 48-162.01(7) and § 48-141 because he claimed he had suffered a material and substantial change in circumstances.

Chief denied that it was responsible for the additional medical treatment because the compensation court never awarded future medical benefits and because Mischo did not suffer a material and substantial change in circumstances.

Trial took place on August 18, 2016. Mischo testified and exhibits were received. Mischo acknowledged that he was placed at MMI by Dr. McClellan in April 2012, but that he continued to see the doctor for neck pain, headaches, and left arm pain. He agreed that a CT scan in 2013 showed a "solid fusion of the prior neck surgery." Mischo said another neck fusion procedure was discussed with him in November 2013, and in February 2015, Dr. McClellan recommended that Mischo see a shoulder specialist. And although Dr. McClellan took Mischo off work in November 2015, Mischo stated that he worked until "[r]ight before . . . Christmas break" in December. Mischo said he had been on "medical leave" since then. Mischo described his left shoulder as being "sore constantly, and then it moves up to the left side of my neck and comes across and that's when the headaches start."

On cross-examination, Mischo acknowledged that prior to his injuries with Chief, he had three low back injuries (from moving boxes, lifting an employee out of a car, and falling down stairs) when he was working with the railroad (Union Pacific), and that he "retired" from the railroad on a disability settlement in 1989 after working there for about 22 years. At the time of the August 2016 trial, Mischo indicated he had been working for Student Transportation of America (STA) for 2-1/2 years where he "fuel[s] the school buses." He suffered an injury there on May 14, 2014, when he stepped in a hole and fell on his left side. Mischo acknowledged that he told a doctor in August 2015 that he had retired but still fueled buses for STA.

The compensation court entered an Order of Dismissal on September 15, 2016. The court found that Mischo's pain on the left side of his neck was "the same pain that was first diagnosed in early 2012." The compensation court specifically stated that it did not find Dr. McClellan's "fifth opinion" credible. The "fifth opinion" was the response to question 3(b) of the August 2015 form titled "Workers' Compensation Medical Report." In response to question 3(b) ("Do you agree that this recommendation represents a material and substantial change in circumstances since you last pronounced the patient at MMI for the accident detailed above (in that said surgery had not been recommended at that time)?"), Dr. McClellan checked yes, drew a line through the check mark, and wrote "I don't understand the question." After finding Dr. McClellan's opinion on the question not credible, the court also found that "McClellan lacked the requisite knowledge to make an informed opinion with respect to this opinion." Accordingly, the Court rejected McClellan's "5th opinion" [answer to question 3(b)], found the evidence failed to show a change in Mischo's medical impairment and disability, and therefore concluded that Mischo failed to satisfy his burden of proof to show that a material and substantial increase in incapacity had occurred such that future medical care benefits could be awarded pursuant to § 48-141. The court also found that

§ 48-162.01(7) did not grant it the authority to modify a previous award to grant benefits not originally provided without first proving the requirements of § 48-141, which Mischo had failed to do. The court dismissed Mischo's petition with prejudice. Mischo timely appealed.

## III. ASSIGNMENTS OF ERROR

Restated, Mischo assigns the compensation court erred by failing to (1) apply the correct legal standard under § 48-141, (2) find that he suffered a material and substantial change in circumstances, (3) find that he is entitled to future medical care by implication, (4) find that the proposed surgery was reasonable and necessary medical treatment, and (5) award attorney's fees and/or waiting time penalties.

## IV. STANDARD OF REVIEW

A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Rader v. Speer Auto*, 287 Neb. 116, 841 N.W.2d 383 (2013).

In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court, a higher appellate court reviews the trial judge's findings of fact, which will not be disturbed unless clearly wrong. *Id.* If the record contains evidence to substantiate the factual conclusions reached by the trial judge of the compensation court, an appellate court is precluded from substituting its view of the facts for that of the compensation court. *Id.* Regarding questions of law, an appellate court in workers' compensation cases is obligated to make its own decisions. *Id.*

## V. ANALYSIS

An award was entered by the compensation court on May 9, 2012, which determined Mischo was entitled to benefits for two injuries: a 2008 injury not relevant here, and the April 11, 2011, injury at issue in this appeal. A further award related to the April 2011 injury was entered by the compensation court on December 5, 2012, finding that Mischo had reached MMI as of April 16 that year and had sustained a 20-percent loss of earning capacity. No future medical benefits were awarded. Although Mischo appealed the December 5 further award, Mischo did not assign as error the court's failure to award future medical benefits. Rather, Mischo challenged only procedural aspects of the case. See *Mischo v. Chief School Bus Serv.*, No. A-13-011, 2014 Neb. App. LEXIS 138, 2014 WL 4100755 (Neb. App. Aug. 19, 2014) (selected for posting to court website). Accordingly, in the present case, Mischo and Chief stipulated at trial that the compensation court had not awarded future medical care in either the May 9 or December 5, 2012, awards.

### 1. APPROPRIATE STANDARD UNDER § 48-141

Mischo argued at trial that even though future medical care was not awarded in the compensation court's prior awards, § 48-141 would nevertheless allow modification if there has

been a substantial change in Mischo's circumstances. On appeal, Mischo argues the compensation court applied the incorrect legal standard under § 48-141 in that it failed to take "into consideration the temporary situation Mischo finds himself in[,]" and that this is "a new issue not contemplated by appellate courts previously[.]" Brief for appellant at 20.

> Under § 48-141, an award by the compensation court may be modified:
> (1) At any time by agreement of the parties with the approval of the Nebraska Workers' Compensation Court; or (2) if the parties cannot agree, then at any time after six months from the date of the agreement or award, an application may be made by either party on the ground of increase or decrease of incapacity due solely to the injury.

Applicable here, to obtain a modification of an award under § 48-141(2), an applicant must prove, by a preponderance of evidence, that the increase or decrease in incapacity was due solely to the injury resulting from the original accident. *Rader v. Speer Auto*, 287 Neb. 116, 841 N.W.2d 383 (2013). The applicant must prove there exists a material and substantial change for the better or worse in the condition, a change in circumstances that justifies a modification, distinct and different from the condition for which the adjudication had been previously made. *Id*.

An applicant who seeks to fulfill the requirements set forth in § 48-141 by demonstrating a change in incapacity must establish both a change in the employee's physical condition, or impairment, and a change in the employee's disability. *Rader, supra*. The term "impairment" is a medical assessment, whereas the term "disability" is a legal issue. *Id*. Under the workers' compensation law, "disability" refers to loss of earning capacity and not to functional or medical loss alone. *Id*.

Chief points out that "[f]uture medical expense claims relating to an 'already-adjudicated accident are allowed only if (1) the requirements for modification under § 48-141 are met or (2) the final award included an award for future medical expenses.'" Brief for appellee at 9 (quoting *Thornton v. Grand Island Contract Carriers*, 262 Neb. 740, 634 N.W.2d 794 (2001)). Because it is undisputed that neither the award nor the further award in this case provided for future medical care, Chief asserts § 48-141 provides the appropriate standard and the compensation court applied it correctly. We agree.

Once a party has filed a petition and an award of compensation has been entered by the Workers' Compensation Court, that award is final and not subject to readjustment unless there is an increase or decrease in incapacity or the condition of a dependent has changed. *Thornton, supra*. In other words, an injured worker may be entitled to future medical expenses under § 48-120 (Cum. Supp. 2016), but the injured worker must prove such entitlement and obtain an award with respect to the future medical expenses. See *Thornton, supra*. The employer can then, if warranted, appeal that final award. If, on the other hand, future medical expenses are not part of the final award, that judgment is final and any future claims for medical expenses relating to the same accident are absolutely barred unless the requirements of § 48-141 are met. *Thornton, supra*.

Based on the legal principles set forth above, the compensation court correctly applied § 48-141 by considering whether Mischo had proven, by a preponderance of evidence, that the increase in his alleged incapacity was due solely to the injury resulting from the original accident.

In considering any change in incapacity, the compensation court's order contained a detailed examination of whether Mischo's physical condition (impairment) and disability (loss of earning capacity) had worsened due solely to the April 2011 injury.

Mischo suggests that his case presents an issue of first impression because we have not interpreted § 48-141 "in the context of a modification of an award to obtain recommended surgery in a temporary situation like the one at issue where there was no explicit prior finding for future medical care." Brief for appellant at 17-18. He argues the current standard "doesn't necessarily make sense in the context of a recommended surgery post-award, which is the circumstance that Mischo faced in this matter." Id. at 18. Mischo suggests he should not be required to prove a change in disability, e.g. loss of earning capacity, to modify his award because a worker "can't possibly show a permanent change in a loss of earning capacity without the benefit of a surgery." Id.

Mischo is correct that a loss of earning capacity might change after a surgical procedure; in fact, the expected outcome would be an improved (lower) loss of earning capacity if the surgery successfully eliminates or reduces prior physical restrictions. However, the possibility of any increase or decrease in loss of earning capacity post-surgery does not change Mischo's burden under § 48-141 to show a material and substantial change for the worse in his condition, which is distinct and different from his condition at the time of the previous adjudication. See Rader, supra. We fail to see the alleged impossibility of this standard in Mischo's case, e.g. why he could not present evidence that since the further award, his condition and earning capacity had worsened due solely to the injury. Mischo could have produced evidence of a change in his physical condition (new restrictions, for example), along with evidence of how such restrictions have further impacted his ability to continue working in a light or medium demand capacity. Notably, at the time of the further award in December 2012, the compensation court concluded Mischo had sustained permanent restrictions and limitations arising out of the cervical spine injury. This resulted in the court awarding Mischo a 20-percent loss of earning capacity, which was based upon Dr. McClellan's opinion that Mischo could not return to commercial driving, and could only return to light or medium demand work.

Therefore, to warrant modification of the further award, Mischo did not need to present evidence of what his loss of earning capacity might be after the requested surgery. Rather, he needed to present evidence showing he could no longer work in the light or medium demand work categories. In its September 2016 order dismissing Mischo's petition, the compensation court noted that back in October 2012 (preceding the further award), Dr. McClellan had taken Mischo off work at that time because of continued left-sided neck pain and headaches. The court stated in its order, "[Mischo] continued to bounce back and forth from being unable to return to work, to being released to return to work within these restrictions for the next three years." The court further stated that even though Mischo had been taken off work in November 2015, Mischo continued working for approximately six more weeks. And even though Mischo claimed to have retired because of neck issues, the court correctly noted there was no medical information in the record that Mischo was taken off work in December 2015 because of problems to his neck. The court concluded "[t]hese facts reveal that [Mischo's] disability has not been materially and substantially changed since entry of the December 2012 Further Award." After careful consideration of the

evidence to determine whether Mischo's condition had worsened since the further award, the court concluded it had not. There was no error by the compensation court in applying the standards for modification under § 48-141 as previously established by the appellate courts.

## 2. MATERIAL AND SUBSTANTIAL CHANGE

Mischo argues that "the Trial Court's factual finding [that he did not suffer a material and substantial change] is clearly erroneous and is not substantiated by the evidence." Brief for appellant at 26. He asserts the compensation court's dismissal was "based upon the disregarding/mischaracterization of the [medical] records, failing to afford any credibility to the lone doctor's opinion because he failed to use magic words[,] and a legal error of the [t]rial [c]ourt in finding its prior failure to award future medical care means it must do the same now." *Id*. Chief asserts that Mischo failed to demonstrate a change in medical impairment and a change in disability and, therefore, he failed to demonstrate any change in incapacity.

Whether an applicant's incapacity has increased under the terms of § 48-141 is a finding of fact. *Rader v. Speer Auto*, 287 Neb. 116, 841 N.W.2d 383 (2013). Upon appellate review, the findings of fact made by the trial judge have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. *Id*. If the record contains evidence to substantiate the factual conclusions reached by the trial judge of the compensation court, an appellate court is precluded from substituting its view of the facts for that of the compensation court. *Id*.

As discussed above, § 48-141 provides the appropriate standard for Mischo's case. An applicant who seeks to fulfill the requirements set forth in § 48-141 by demonstrating a change in incapacity must establish both a change in the employee's physical condition, or impairment, and a change in the employee's disability. *Rader, supra*.

When considering whether Mischo had sustained any change to his medical impairment, the compensation court drew special attention to the August 2015 fill-in-the-blank form completed by Dr. McClellan. On the form, Dr. McClellan opined that Mischo's diagnosis was cervical radiculopathy secondary to the April 2011 work injury, that this condition was caused by, significantly contributed to, or aggravated by the work injury in April 2011, that Mischo would need some form of future medical care, and that Mischo should undergo a C6-7 fusion. However, Question 3(b) on the form asked "Do you agree that this recommendation represents a material and substantial change in circumstances since you last pronounced the patient at MMI for the accident detailed above (in that said surgery had not been recommended at that time)?" The question called for a yes or no answer. Dr. McClellan placed a check mark on "yes," but drew a line through it. In addition, Dr. McClellan wrote "I don't understand the question" next to the "yes" and "no" check mark areas. The compensation court stated that the "notation weakens Dr. McClellan's credibility on this opinion, and the Court finds that Dr. McClellan lacked the requisite knowledge to make an informed opinion with respect to this opinion. Accordingly, this court rejects Dr. McClellan's 5[th] opinion as set forth above." The court found that "the totality of the evidence establishes that the pain in the left side of plaintiff's neck and headaches resulting from this pain, which resulted in the recommendation for surgery, [is] the same pain that was first diagnosed in early 2012."

The court continued, stating that Mischo's "left sided neck pain and headaches have been continuous and ongoing since at least January 2012, and have been related to the original April 2011 work injury." The court found that Mischo failed to show a change in medical impairment because the "medical records indicate that the health status of plaintiff's cervical condition has not changed since he was first placed at [MMI] in April 2012." Finally, the compensation court concluded that Dr. McClellan's November 5, 2015, note, dictating that Mischo could not return to work until he underwent additional evaluation, did "not say that plaintiff's medical condition has worsened such that [Mischo] has incurred an increase in his medical impairment or that there has been a worsening of his restrictions and limitations."

The record supports the compensation court's determination; therefore, it was not clearly wrong. See *Rader, supra.* As to Mischo's argument that the compensation court failed to afford credibility to Dr. McClellan's opinion, it is well established that the compensation court is not required to take an expert's opinion as binding and may, as may any other trier of fact, either accept or reject such an opinion. See *Stansbury v. HEP, Inc.*, 248 Neb. 706, 539 N.W.2d 28 (1995). Other evidence supports the court's decision. Dr. McClellan's January 9, 2012, record indicates that Mischo exhibited "moderate/advanced left and mild right facet arthropathy. Likely a small disk bulge. Mild loss of disk height. There is a moderate/severe left bony foraminal stenosis. No appreciable spinal canal or right foraminal narrowing" at the C6-C7 levels. Additionally, in April 2012, Dr. McClellan diagnosed Mischo with cervicalgia, a term used to describe pain or significant discomfort in the neck, but yet he still placed Mischo at MMI. Between 2012 and 2016, Mischo continued to report neck pain. Finally, Dr. McClellan's November 5, 2015, note taking Mischo off work does not say that Mischo suffered an increase in medical impairment or an increase in his restrictions and limitations. It only states that Mischo is "[n]ot able to return to work (temporary total disability) until evaluation with Dr. McClellan." The compensation court did not err when it concluded that Mischo failed to demonstrate any change in his physical condition (impairment).

The compensation court also considered whether Mischo presented evidence of a change in disability. The compensation court noted: Mischo had reached MMI in April 2012 and returned to work, albeit under permanent restrictions; Mischo was taken off work on October 2012 due to left sided neck pain and headaches; and Mischo "continued to bounce back and forth from being unable to work, to being released to return to work within these restrictions for the next three years. In November 2013, Dr. McClellan recommended cervical discectomy and fusion surgery to help alleviate plaintiff's cervical pain." The compensation court noted that while Mischo was again taken off work on November 5, 2015, he continued to work for approximately six additional weeks.

Referring to the further award, the court noted the vocational information at that time indicated Mischo had sustained a 20-percent loss of earning capacity as a result of his neck injury. However, there was no vocational information showing that Mischo sustained additional loss of earning capacity since the further award. Further, although Dr. McClellan indicated Mischo should be off work beginning November 5, 2015, the court pointed out that Mischo "continued to work until December 17, 2015, until taking retirement." For these reasons, the court concluded Mischo had not proven a change in disability since the further award.

Mischo argues that "[e]ither Mischo was not at [MMI] at the time of the Further Award and no loss of earning capacity should have been assessed, or he was at [MMI] and two subsequent

- 9 -

notes taking Mischo off work do reflect a change in circumstances/disability." Brief for appellant at 28. As to Mischo's first argument that Mischo was not at MMI at the time of the further award, we note that the determination of MMI and Mischo's loss of earning capacity was not appealed after entry of the further award and cannot be challenged in this appeal. As to Mischo's suggestion that the two subsequent doctor's notes taking Mischo off work reflect a change in circumstances in terms of disability, we must defer to the compensation court and its findings on that issue. See *Rader, supra* (whether an applicant's incapacity has increased under § 48-141 is a finding of fact). While Mischo may have been temporarily taken off work, as he had been in the past, this does not automatically equate to evidence of an increased loss of earning capacity directly traceable to his April 2011 injury. The compensation court was not clearly wrong in concluding that Mischo had not sustained a change in disability.

We find no error in the compensation court's determination that Mischo "failed to satisfy his burden of proof to show that a material and substantial increase in incapacity has occurred such that future medical care benefits shall be awarded."

### 3. IMPLIED ENTITLEMENT TO FUTURE MEDICAL CARE

As an alternative argument, Mischo posits that the compensation court's "finding in its initial award on May 9, 2012 that Mischo has not reached [MMI] implies legally that he was entitled to future medical care by operation of law." Brief for appellant at 39.

However, where an order is clearly intended to serve as a final adjudication of the rights and liabilities of the parties, the silence of the order on requests for relief not spoken to can be construed as a denial of those requests under the circumstances. *D'Quaix v. Chadron State College*, 272 Neb. 859, 725 N.W.2d 558 (2007). When a final award does not include future medical care, that judgment is final and any future claims for medical expenses relating to the same accident are absolutely barred unless the requirements of § 48-141 are met. *Thornton v. Grand Island Contract Carriers*, 262 Neb. 740, 634 N.W.2d 794 (2001).

Mischo did not present this "implied" future medical care argument to the compensation court. Rather, Mischo's counsel accepted the following stipulation during trial: "[t]he parties stipulate that the Court did not award future medical care in either the May 9, 2012, award, or the December 5, 2012 further award." An appellate court will not consider an issue on appeal which was not presented to or passed upon by the trial court; therefore, we will not discuss this argument further. See *deNourie & Yost Homes v. Frost*, 295 Neb. 912, 893 N.W.2d 669 (2017).

### 4. REASONABLE AND NECESSARY MEDICAL CARE

Since we are affirming the compensation court's decision that Mischo failed to meet his burden to modify the court's further award, Mischo is not entitled to future medical care, and we need not evaluate whether his proposed treatment qualifies as reasonable and necessary medical care.

### 5. TEMPORARY TOTAL DISABILITY PAYMENTS

Mischo argues that he is entitled to temporary total disability (TTD) payments from December 17, 2015, to the present. He asserts that "Dr. McClellan's notes and report, and Mischo's

testimony provide a sufficient basis for the Court to award TTD from December 17, 2015 until [MMI] is reached for the cervical spine surgery recommended by Dr. McClellan." Brief for appellant at 44.

Chief argues that Mischo is not entitled to TTD because he failed to meet his burden of proof for modification under § 48-141 or show that his alleged current TTD is related to the 2011 work injury.

When an injured worker has attained maximum physical recovery after a work-related injury, any residual disability from a compensable injury is permanent and prevents the worker's entitlement to compensation for temporary disability. *Heiliger v. Walters and Heiliger Elec., Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990). The compensation court determined Mischo reached MMI on April 16, 2012, and failed to satisfy his burden to prove a material and substantial increase in incapacity has occurred warranting a modification of the further award. Therefore, Mischo is not entitled to additional TTD payments.

### 6. ATTORNEY FEES AND WAITING TIME PENALTIES

Mischo argues that he is entitled to a reasonable attorney fee and waiting time penalties because "[t]here was no reasonable basis for [Chief's] refusal to pay for the recommended medical treatment." Brief for appellant at 45.

Neb. Rev. Stat. § 48-125 (Cum. Supp. 2016) authorizes a 50-percent penalty for waiting time involving delinquent payment of compensation and attorney fees where there is no reasonable controversy regarding an employee's claim for workers' compensation. *Nichols v. Fairway Bldg. Prods.,* 294 Neb. 657, 884 N.W.2d 124 (2016). For the purposes of § 48-125, a reasonable controversy exits if (1) there is a question of law previously unanswered by the appellate courts, which question must be answered to determine a right or liability for disposition of a claim under the Nebraska Workers' Compensation Act, or (2) if the properly adduced evidence would support reasonable but opposite conclusions by the compensation court about an aspect of an employee's claim, which conclusions affect allowance or rejection of an employee's claim, in whole or in part. See *Id*. The purpose of the provision for attorney fees in § 48-125 is to encourage prompt payment by making delay costly if an employer neglects to pay medical payments after 30 days' notice has been given of the obligation for the medical payments. *Simmons v. Precast Haulers*, 288 Neb. 480, 849 N.W.2d 117 (2014).

Chief argues that Mischo is not entitled to either waiting time penalties or attorney fees because he failed to establish the recommended medical care had been previously awarded or was otherwise warranted through modification. Further, no medical bills had been submitted to Chief, and there was a reasonable controversy as to whether Chief was responsible for the requested surgery. "[Chief] has no burden to compensate [Mischo] for care simply because [Mischo] was previously entitled to benefits from [Chief], which is essentially what [Chief] is requesting the Court find." Brief for appellee at 22.

As already discussed, no future medical care had been previously awarded by the compensation court. Chief was under no present duty to pay for the surgery Mischo was seeking. Also, as evident in the outcome in the compensation court and on appeal to this court, a reasonable controversy existed as to whether Mischo sustained a material and substantial change in his

condition since the further award. The compensation court did not err by failing to award waiting time penalties or attorney fees.

## VI. CONCLUSION

For the reasons stated above, we affirm the decision of the compensation court.

AFFIRMED.