TIMOTHY L. SWANSON, APPELLEE, V. PARK PLACE AUTOMOTIVE AND FARMERS INSURANCE GROUP, APPELLANTS.

672 N.W.2d 405

Filed December 19, 2003.   No. S-03-167.

134

David A. Dudley, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellants.

Darrell K. Stock, of Snyder & Stock, for appellee.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

Timothy L. Swanson was injured in an accident that occurred while he was test-driving an automobile for his employer, Park Place Automotive (Park Place), and he was awarded workers' compensation benefits. The primary issue presented in this appeal is whether Swanson could receive loss of earning power and vocational rehabilitation benefits without having been assigned a permanent functional impairment rating.

## BACKGROUND

Swanson was injured on May 21, 1999, when the vehicle he was test-driving struck another vehicle in a parking lot. Swanson had pain in his back and leg following the accident and went to the hospital on the same day. Swanson was referred to Dr. Daniel Ripa, who became Swanson's treating physician for the injuries at issue in this appeal. Swanson continued to receive medical treatment and physical therapy, but his condition did not improve, and on March 6, 2000, Swanson had a "hemil-aminotomy with lateral recessed decompression of the left S1 nerve overlying small lumbar disk herniation left L5-S1 level." After the surgery, Dr. Ripa determined that Swanson had achieved maximum medical improvement. Dr. Ripa opined that Swanson should avoid lifting in excess of 25 to 30 pounds on a

repetitive basis; should not be involved in activities that require prolonged bending, stooping, squatting, kneeling, or repetitive bending below the knee level; and should permanently avoid lifting greater than 50 pounds. The record also contains a loss of earning capacity analysis, in which a vocational rehabilitation specialist opined that based on Swanson's physical restrictions, his loss of earning capacity was approximately 15 percent.

Prior to his 1999 accident, Swanson had been treated for back and leg pain. Swanson was treated by a chiropractor in 1988 for low-back pain and improved as a result of the treatment. Swanson again received chiropractic treatment for several instances of back pain between 1989 and 1999. In his deposition, Swanson stated that he had not had leg pain prior to the accident and that when giving his medical history to Dr. Ripa, Swanson had not reported any prior leg pain. However, at trial, Swanson testified that he had testified inaccurately at his deposition and that he had in fact told Dr. Ripa about his prior leg pain.

The record contains two letters from Dr. Ripa to Swanson's counsel, both dated April 7, 2000, expressing an opinion regarding the connection between Swanson's preexisting back condition, the accident, and Swanson's subsequent injuries and treatment. There does not appear to be any explanation in the record for the existence of the two separate letters. One letter states, in relevant part, that "most likely the ongoing current medical treatment is related, at least in some degree, to his original radiographic abnormalities but may well have been exacerbated in his motor vehicle accident." The other letter states, less ambiguously, that Swanson's "motor vehicle accident of May 1999 exacerbated his low back condition and resulted in the necessary medical treatment including the surgery." No objection was made at trial to the exhibit containing Dr. Ripa's opinion(s) regarding Swanson's injury.

The single judge, relying on Dr. Ripa's opinion, determined that Swanson's accident "injured his low back, which required surgery." The single judge awarded temporary total disability benefits and directed Park Place to pay Swanson's present and future medical expenses. However, because Dr. Ripa did not assign Swanson a permanent functional impairment rating, no permanent partial disability benefits were awarded, nor were

vocational rehabilitation benefits. See *Green v. Drivers Mgmt., Inc.*, 263 Neb. 197, 639 N.W.2d 94 (2002). Both parties filed an application for review in the Workers' Compensation Court. A three-judge review panel affirmed the single judge's finding that Swanson's low-back injury was caused by the automobile accident. However, the review panel concluded that *Green* did not preclude an award of loss of earning power or vocational rehabilitation benefits in the absence of a permanent functional impairment rating, so long as permanent restrictions had been imposed by a physician. The review panel reversed the single judge on that issue. Park Place filed a timely appeal.

## ASSIGNMENTS OF ERROR

Park Place assigns that the review panel erred in ruling that (1) the evidence presented at trial was sufficient to show that Swanson suffered a work-related injury to his lower back, rather than his condition's being the result of a natural progression of a preexisting condition, and (2) Swanson was entitled to loss of earning power and vocational rehabilitation benefits even though he had not been assigned a permanent functional impairment rating.

Park Place also argues, very briefly, that Swanson would not be entitled to vocational rehabilitation because he left a job provided by Park Place that was within his physical restrictions. However, because this was not assigned as error, we do not consider it. See *State ex rel. City of Alma v. Furnas Cty. Farms*, 266 Neb. 558, 667 N.W.2d 512 (2003) (errors argued but not assigned will not be considered on appeal).

## STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2002), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Morris v. Nebraska Health System*, 266 Neb. 285, 664 N.W.2d 436 (2003). When testing the sufficiency of the evidence to support findings

of fact made by the Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable to the successful party and the successful party will have the benefit of every inference reasonably deducible from the evidence. *Owen v. American Hydraulics*, 258 Neb. 881, 606 N.W.2d 470 (2000). In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of fact of the single judge who conducted the original hearing; the findings of fact of the single judge will not be disturbed on appeal unless clearly wrong. *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003). An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Id.*

## ANALYSIS

### SUFFICIENCY OF EVIDENCE OF WORK-RELATED INJURY

Park Place's first assignment of error challenges the sufficiency of the evidence to support the single judge's finding that Swanson suffered a compensable, work-related injury. Park Place argues that Swanson's injury was the result of the natural progression of his preexisting back condition.

Park Place adduced evidence before the single judge to support that conclusion. As noted above, Swanson had a history of back problems, and Park Place offered the opinion of Dr. Charles Taylon, a neurosurgeon, who opined that "[a]ny back problems that [Swanson] had [after the accident] are clearly a continuation of the problem he was having just a short time before the accident." Dr. Taylon further opined that there was no evidence that the accident had anything to do with Swanson's subsequent need for surgery and questioned whether the accident had anything to do with Swanson's back pain.

However, as also noted above, Swanson offered the opinion of Dr. Ripa, his treating physician, who opined that Swanson's "motor vehicle accident . . . exacerbated his low back condition and resulted in the necessary medical treatment including the surgery." In a workers' compensation case involving a preexisting condition, the claimant must prove by a preponderance of evidence that the claimed injury or disability was caused

by the claimant's employment and is not merely the progression of a condition present before the employment-related incident alleged as the cause of the disability. *Winn v. Geo. A. Hormel & Co.*, 252 Neb. 29, 560 N.W.2d 143 (1997); *Cox v. Fagen Inc.*, 249 Neb. 677, 545 N.W.2d 80 (1996). Such claimant may recover when an injury, arising out of and in the course of employment, combines with a preexisting condition to produce disability, notwithstanding that in the absence of the preexisting condition, no disability would have resulted. *Id.* In short, "the lighting up or acceleration of preexisting conditions by accident is compensable." *Hale v. Vickers, Inc.*, 10 Neb. App. 627, 634, 635 N.W.2d 458, 468 (2001).

■ This case presents conflicting expert opinions on whether Swanson's postaccident surgery was necessitated by his accident or was the natural progression of a preexisting back condition. The single judge accepted Dr. Ripa's opinion and determined that Swanson suffered a compensable work-related injury. Where the record presents nothing more than conflicting medical testimony, an appellate court will not substitute its judgment for that of the compensation court. *Frank v. A & L Insulation*, 256 Neb. 898, 594 N.W.2d 586 (1999).

Park Place offers two arguments against Dr. Ripa's opinion. First, Park Place argues that Dr. Ripa's opinion lacked appropriate foundation because, according to Park Place, Swanson did not provide Dr. Ripa with a complete and truthful medical history. Second, Park Place contends that the evidence of Dr. Ripa's opinion is inconsistent and unreliable. We note, initially, that Park Place's arguments are essentially foundational objections to Dr. Ripa's expert opinion testimony. However, the exhibits setting forth Dr. Ripa's opinion were received into evidence without objection. Because it did not make a proper foundational objection before the single judge, Park Place failed to preserve its foundational arguments for our review. See, *Berggren v. Grand Island Accessories*, 249 Neb. 789, 545 N.W.2d 727 (1996); *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996).

However, even if we consider Park Place's arguments, they are without merit. First, Park Place relies on Swanson's deposition, in which Swanson stated that while he had reported prior back trouble to Dr. Ripa, Swanson had not reported any prior leg

pain. However, at trial, Swanson testified that his deposition was inaccurate and that he had in fact told Dr. Ripa about his prior leg pain. Park Place's brief asserts that "the plaintiff admits that he did not provide Dr. Ripa with any information regarding his prior back and leg problems." Brief for appellants at 11. This is not an accurate statement of the record. Both Swanson's deposition and his trial testimony indicate that Dr. Ripa was informed of Swanson's prior back pain. Swanson's deposition indicates that Dr. Ripa was not informed of any prior leg pain associated with the back pain, but Swanson testified at trial that Dr. Ripa had been informed of Swanson's leg pain, and Swanson testified that his deposition was incorrect.

■ As the trier of fact, the single judge of the compensation court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Zavala v. ConAgra Beef Co.*, 265 Neb. 188, 655 N.W.2d 692 (2003). Swanson was impeached at trial with his inconsistent deposition testimony, and the credibility of that testimony was a matter for the single judge to decide. The single judge's decision to accept Dr. Ripa's opinion was not clearly wrong because of the conflict in Swanson's testimony.

Park Place also relies on the presence in the record of two separate opinion letters from Dr. Ripa to Swanson's attorney, both dated April 7, 2000, which, as set forth above, contain different language relating Swanson's preexisting condition to the need for his surgery. One letter reads as follows:

I was asked by . . . Swanson to write you regarding our opinion on his MRI scan from 12-19-97 compared to the most recent MRI scan that led to his surgery. The two MRI scans are relatively similar in appearance. It would thus be my medical opinion that *most likely the ongoing current medical treatment is related, at least in some degree, to his original radiographic abnormalities but may well have been exacerbated in his motor vehicle accident in May, 1999.*

I am sorry we can't be more specific than that. Please contact us if further information is required.

(Emphasis supplied.)

The other letter states as follows:

I was asked by . . . Swanson to write you regarding our opinion on his MRI scan from 12-19-97 compared to the

most recent MRI scan that led to his surgery. The two MRI scans are relatively similar in appearance. It is my opinion however that *based upon history provided and the physical examinations of . . . Swanson that his motor vehicle accident of May 1999 exacerbated his low back condition and resulted in the necessary medical treatment including the surgery that was required to relieve his disk herniation and nerve root compression.*

Please contact us if further information is required.

(Emphasis supplied.)

Park Place argues that these letters conflict and should be disregarded because they are inconsistent. However, the text of the two letters expresses essentially the same conclusion with respect to Swanson's medical condition. One letter expresses the opinion that Swanson's preexisting condition "may well have been exacerbated" in his accident, and the other letter states that Swanson's accident "exacerbated his low back condition." While one letter states Dr. Ripa's opinion on causation in more definitive language, there is nothing in either letter that is directly contradictory to the other.

Furthermore, the two letters express qualitatively different foundations for the two opinions. One letter mentions only a comparison of MRI scans, while the other letter expresses an opinion based on MRI scans *and* medical history and physical examinations—providing a potential explanation for the differing language, if not substance, of the opinions.

Given these circumstances, we cannot say the single judge was clearly wrong in relying on Dr. Ripa's definitively stated opinion about the cause of Swanson's injuries. Even if the letters were read to conflict to any degree, where the testimony of the same expert is conflicting, resolution of the conflict rests with the trier of fact, the single judge, who in this case resolved that conflict against Park Place. See, *Brandt v. Leon Plastics, Inc.*, 240 Neb. 517, 483 N.W.2d 523 (1992); *Doggett v. Brunswick Corp.*, 217 Neb. 166, 347 N.W.2d 877 (1984); *Watson v. Alpo Pet Foods*, 3 Neb. App. 612, 529 N.W.2d 139 (1995). Cf. *Noordam v. Vickers, Inc.*, 11 Neb. App. 739, 659 N.W.2d 856 (2003). The single judge of the Workers' Compensation Court is the sole judge of the credibility of the witnesses and the weight to be given their testimony,

even where the issue is not one of live testimonial credibility. See *Aken v. Nebraska Methodist Hosp.*, 245 Neb. 161, 511 N.W.2d 762 (1994).

Park Place's arguments regarding Dr. Ripa's opinion, and the sufficiency of the evidence, were resolved against Park Place by the single judge, and the single judge's findings were not clearly wrong. Therefore, Park Place's first assignment of error is without merit.

### Evidence of Permanent Medical Impairment

■ Park Place argues that Swanson was not entitled to loss of earning power and vocational rehabilitation benefits, because he had not been assigned a permanent functional impairment rating. Park Place relies on our opinion in *Green v. Drivers Mgmt., Inc.*, 263 Neb. 197, 639 N.W.2d 94 (2002), in which we explained the concept of permanent medical impairment. We stated that "[t]he term 'impairment' is a medical assessment, while the term 'disability' is a legal issue." *Id.* at 204, 639 N.W.2d at 102. Permanent medical impairment is related directly to the health status of the individual, whereas disability can be determined only within the context of the personal, social, or occupational demands or statutory or regulatory requirements that the individual is unable to meet as a result of the impairment. *Id.*, citing *Phillips v. Industrial Machine*, 257 Neb. 256, 597 N.W.2d 377 (1999) (Gerrard, J., concurring).

■ We held, in *Green, supra*, that before permanent partial disability benefits can be awarded, the claimant must prove that he or she has a permanent impairment.

> Without a finding of permanent medical impairment, there can be no permanent restrictions. Without impairment or restrictions, there can be no disability or labor market access loss. Absent permanent impairment or restrictions, the worker is fully able to return to any employment for which he or she was fitted before the accident, including occupations held before the injuries occurred.

*Id.* at 206, 639 N.W.2d at 103.

In this case, the single judge concluded there was no evidence of a permanent medical impairment, apparently because there was no medical opinion in the record establishing Swanson's

functional (or percentage) impairment rating. However, we agree with the review panel that the single judge erred as a matter of law in this regard. Because the single judge's determination that Swanson did not prove a permanent medical impairment was premised on a legal error, the review panel correctly concluded that the single judge's finding should be reversed.

Once again, we trudge into the needlessly murky distinction between "permanent medical impairment" versus "permanent functional impairment rating." An impairment rating is simply a medical assessment of what physical abilities have been adversely affected or lost by an injury. *Frauendorfer v. Lindsay Mfg. Co.*, 263 Neb. 237, 639 N.W.2d 125 (2002), citing *Phillips, supra.* Although the medical impairment rating given by a doctor may be an important factor, the extent of loss of use does not necessarily equal the extent of medical impairment. *Phillips, supra.* In other words, while a numeric percentage impairment rating may be significant, and even preferable, it is not a sine qua non of a finding of permanent medical impairment. As explained, under similar circumstances, by the Supreme Court of Tennessee:

> We do not think that, when medical evidence establishes permanency, the failure of a medical expert to attribute a percentage of anatomical disability can justify a denial of compensation if the other evidence demonstrates that an award of benefits is appropriate. Otherwise the remedial purpose of the Workers' Compensation Act could easily be frustrated. . . .
>
> While an anatomical disability rating . . . is preferable and ordinarily, if not uniformly, part of the proof offered by either or both parties, the ultimate issue is not the extent of anatomical disability but that of vocational disability, the percentage of which does not definitively depend on the medical proof regarding a percentage of anatomical disability.

*Corcoran v. Foster Auto GMC, Inc.*, 746 S.W.2d 452, 457 (Tenn. 1988). Accord, e.g., *Star Enterprises v. DelBarone*, 746 A.2d 692 (R.I. 2000); *Klein Independent School Dist. v. Wilson*, 834 S.W.2d 3 (Tex. 1992); *Walker v. New Fern Restorium*, 409 So. 2d 1201 (Fla. App. 1982); *Hunter v. Industrial Commission of Arizona*, 130 Ariz. 59, 633 P.2d 1052 (Ariz. App. 1981). But cf.

*Wal-Mart Stores, Inc. v. Connell,* 340 Ark. 475, 10 S.W.3d 882 (2000) (holding on statutory grounds that specific percentage rating is required).

We stated in *Green v. Drivers Mgmt., Inc.,* 263 Neb. 197, 206, 639 N.W.2d 94, 103 (2002), that "[w]ithout a finding of permanent medical impairment, there can be no permanent restrictions. Without impairment or restrictions, there can be no disability or labor market access loss." That is a correct statement of the law—a physician-ordered permanent physical restriction, based on a medically established permanent impairment of a body function, establishes a permanent medical impairment for purposes of determining loss of earning capacity. There is no suggestion in *Green* that a permanent functional *impairment rating* is a necessary prerequisite to an award of indemnity or vocational rehabilitation services in loss of earning power cases.

Dr. Ripa's opinion clearly establishes that Swanson was permanently injured and subject to permanent physical restrictions. Swanson was to avoid lifting in excess of 25 to 30 pounds on a repetitive basis, and he was not to be involved in activities that required prolonged bending, stooping, squatting, kneeling, or repetitive bending below the knee level. Further, Dr. Ripa ordered Swanson to permanently avoid lifting greater than 50 pounds. These permanent physical restrictions led to a loss of earning capacity analysis in the range of 15 percent.

We have long held, in the context of evaluating an expert medical opinion, that such testimony need not be couched in "magic words" such as "reasonable medical certainty" or "reasonable probability." See, e.g., *Owen v. American Hydraulics,* 258 Neb. 881, 606 N.W.2d 470 (2000). Similarly, while medical impairment can be established only through properly qualified medical testimony, see *Phillips v. Industrial Machine,* 257 Neb. 256, 597 N.W.2d 377 (1999), that testimony need not establish a specific percentage impairment rating in order to be legally sufficient. Dr. Ripa's opinion, had the single judge properly considered it on this issue, would have been sufficient to sustain a finding of a permanent medical impairment.

Since the single judge's finding that there was no evidence of medical impairment was based on an incorrect application of the law, the review panel correctly concluded that the single judge's

finding on that issue should be reversed and the cause remanded for a redetermination of Swanson's loss of earning power and entitlement to vocational rehabilitation services. Park Place's second assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, the judgment of the Workers' Compensation Court review panel is affirmed. Because Park Place's appeal to this court did not result in a reduction of the award, Swanson is awarded fees for the services of his attorney in this court, in the amount of $2,430. See, Neb. Ct. R. of Prac. 9F (rev. 2001); Neb. Rev. Stat. § 48-125 (Cum. Supp. 2002); *Miller v. E.M.C. Ins. Cos.*, 259 Neb. 433, 610 N.W.2d 398 (2000).

AFFIRMED.

HENDRY, C.J., and MCCORMACK, J., not participating.