Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/18/2018 08:08 AM CST

- 692 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
WEYERMAN v. FREEMAN EXPOSITIONS
Cite as 26 Neb. App. 692

Randy Weyerman, appellee, v. Freeman Expositions, Inc.,
employer, and Old Republic Insurance Company,
insurance carrier, appellants.

___ N.W.2d ___

Filed December 18, 2018.    No. A-18-277.

1. **Workers' Compensation: Appeal and Error.** Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2016), an appellate court may modify, reverse, or set aside a compensation court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

2. ____: ____. Findings of fact made by the compensation court have the same force and effect as a jury verdict and will not be set aside unless clearly erroneous.

3. **Workers' Compensation: Evidence: Appeal and Error.** When testing the sufficiency of the evidence to support findings of fact made by the compensation court trial judge, the evidence must be considered in the light most favorable to the successful party and the successful party will have the benefit of every inference reasonably deducible from the evidence.

4. **Employer and Employee: Independent Contractor.** There is no single test for determining whether one performs services for another as an employee or as an independent contractor.

5. ____: ____. Ordinarily, when a court is presented with a dispute regarding a party's status as an employee or an independent contractor, the party's status is a question of fact which must be determined after consideration of all the evidence in the case.

6. **Workers' Compensation.** As the trier of fact, the compensation court is the sole judge of the credibility of the witnesses and the weight to be given their testimony.

- 693 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
WEYERMAN v. FREEMAN EXPOSITIONS
Cite as 26 Neb. App. 692

7. **Workers' Compensation: Insurance: Liability: Time.** When a subsequent injury aggravates a prior injury, the insurer at risk at the time of the subsequent injury is liable. But, if the subsequent injury is a recurrence of the prior injury, the insurer at risk at the time of the prior injury is liable.

8. **Workers' Compensation: Appeal and Error.** A finding in regard to causation of an injury is one for determination by the compensation court as the finder of fact.

9. **Workers' Compensation: Expert Witnesses: Physicians and Surgeons.** Resolving conflicts within a health care provider's opinion rests with the compensation court, as the trier of fact.

10. **Workers' Compensation: Words and Phrases.** Under Neb. Rev. Stat. § 48-121 (Reissue 2010), a workers' compensation claimant may receive permanent or temporary workers' compensation benefits for either partial or total disability. Temporary disability ordinarily continues until the claimant is restored so far as the permanent character of his or her injuries will permit.

11. **Workers' Compensation.** Once a worker has reached maximum medical improvement from a disabling injury and the worker's permanent disability and concomitant decreased earning capacity have been determined, an award of permanent disability is appropriate.

12. ____. Generally, whether a workers' compensation claimant has reached maximum medical improvement is a question of fact.

13. **Workers' Compensation: Appeal and Error.** When the record presents nothing more than conflicting medical testimony, an appellate court will not substitute its judgment for that of the compensation court.

Appeal from the Workers' Compensation Court: James R. Coe, Judge. Affirmed.

Abigail A. Wenninghoff and Jocelyn J. Brasher, of Larson, Kuper & Wenninghoff, P.C., L.L.O., for appellants.

Jacob M. Steinkemper, of Steinkemper Law, P.C., L.L.O., for appellee.

Riedmann, Bishop, and Arterburn, Judges.

Arterburn, Judge.

## INTRODUCTION

Freeman Expositions, Inc., and its insurance carrier, Old Republic Insurance Company (referred to herein individually

- 694 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
WEYERMAN v. FREEMAN EXPOSITIONS
Cite as 26 Neb. App. 692

and collectively as "Freeman Expositions"), appeal from the Nebraska Workers' Compensation Court's award of benefits to Randy Weyerman. In the award, the compensation court ordered Freeman Expositions to pay to Weyerman temporary total disability payments. In addition, the court ordered Freeman Expositions to "continue to provide and pay for such future medical and hospital services and treatment as may be reasonably necessary as a result of [Weyerman's] accident and injury." On appeal, Freeman Expositions assigns numerous errors, including that the compensation court erred in finding that it was Weyerman's employer on the day of his accident; that Weyerman's injury occurred on September 17, 2015, rather than on October 9; that Weyerman had not yet reached maximum medical improvement (MMI); and that Weyerman is entitled to future medical care. For the reasons set forth herein, we affirm the compensation court's award of benefits to Weyerman.

## BACKGROUND

### Weyerman's Work
#### as Stagehand

Since 1994, Weyerman has worked as a stagehand. He described his job as "mostly set[ting] up . . . concerts, operas, plays, unload[ing] trucks, set[ting] up the gear. We do the lighting, the sound. We do all the categories. We also do carpentry and we run spotlights for the shows and we also work as a deckhand moving band gear." In order to facilitate job opportunities, Weyerman is a member of the "International Alliance of Theatrical, Stage, and Moving Pictures." This group is also referred to in our record as the "Local 42" or the "union." Local 42 acts as a "referral hall," obtaining and assigning jobs to its members.

In 2015, Local 42 had a collective bargaining agreement with Complete Payroll Services, Inc. (Complete Payroll). Pursuant to that agreement, Complete Payroll was considered the employer of members of Local 42 when the members

- 695 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
WEYERMAN v. FREEMAN EXPOSITIONS
Cite as 26 Neb. App. 692

worked on Complete Payroll jobs. The president of Complete Payroll confirmed that in 2015, the company was the employer of union members when they worked on Complete Payroll jobs. He explained that Complete Payroll had contracts with various vendors who needed stagehands. Complete Payroll would provide union members to the vendors. In return, the vendors would pay Complete Payroll for the work completed by union members. Complete Payroll would then disburse paychecks directly to union members. In addition, Complete Payroll provided union members with certain employment benefits. The collective bargaining agreement between Local 42 and Complete Payroll provided that Complete Payroll possessed "Management Rights" regarding its workforce:

> Subject to the provisions of this Agreement and applicable state and federal law, the Employer retains the sole right to manage its business and direct the work force including, but without being limited to, the right to establish new tasks, abolish or change existing tasks, increase or decrease the number of tasks, change materials, processes, products, equipment and operations. The Employer shall have the right to schedule and assign work to be performed, establish, maintain and enforce reasonable plant rules and regulations, establish attendance policies and have the right to hire or rehire employees, promote employees, to demote or suspend, discipline or discharge for just cause, and to transfer or layoff employees because of lack of work.

The agreement also delineated a list of "work rules" for union members. These rules addressed such things as the length of the workday and the workweek, overtime and "premium" pay, and expectations during performances or rehearsals.

Members of Local 42 could also obtain work separate and apart from Complete Payroll. In 2015, Local 42 also had a collective bargaining agreement with Freeman Expositions. That agreement referred to Freeman Expositions as the "employer" when union members were working on Freeman Expositions'

- 696 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
WEYERMAN v. FREEMAN EXPOSITIONS
Cite as 26 Neb. App. 692

jobs. In fact, the first time a union member would work for Freeman Expositions, the member had to fill out "new hire paperwork." Freeman Expositions would assign each union member an employee number and keep a record of each union member who had done work for the company. Freeman Expositions paid union members directly for their work on Freeman Expositions' jobs. In addition, the agreement between Local 42 and Freeman Expositions included a description of the management rights possessed by Freeman Expositions. This description is nearly identical to the description of management rights retained by Complete Payroll in its agreement with Local 42. Robert Lane, the business agent for Local 42, testified that Freeman Expositions managed union workers at the jobsites and controlled the work that the members completed.

## WEYERMAN'S INJURY
### AND TREATMENT

On September 17, 2015, Weyerman was working for Freeman Expositions, setting up for a trade show. During the first hour of his workday, Weyerman unloaded a truck full of materials, including heavy carts and "[c]urtain rod carts." While he was still unloading the materials, Weyerman began to feel pain in his back. Despite the pain, Weyerman continued to work, rolling out aisle carpets and hanging curtains for individual booths. As Weyerman worked, the pain worsened. Weyerman described the pain as "sharp" and "pinching." Weyerman finished his workday and had the next day off of work.

When Weyerman returned to work after his day off and began cleaning up after the trade show, he "was hurting horribly." He got through the workday, but was only able to put away folding chairs. He could not do much physical labor. Weyerman's pain did not improve. By 5 days after the accident, Weyerman described the pain as "brutal." He was unable to even "get up off the floor." Weyerman decided that he needed to report his injury and see a doctor. Weyerman informed Lane that he had hurt his back while working for Freeman

- 697 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
WEYERMAN v. FREEMAN EXPOSITIONS
Cite as 26 Neb. App. 692

Expositions. Lane forwarded Weyerman's accident report to Freeman Expositions. Freeman Expositions then authorized Weyerman to see Dr. Arthur West, who became Weyerman's treating physician.

Medical records indicate that when Weyerman first saw his treating physician on September 22, 2015, he was diagnosed with a lumbar sprain and prescribed pain medication. The treating physician's records indicate that 3 days later, on September 25, during a followup appointment, Weyerman told him that his pain had decreased and that his symptoms were improving. As a result of Weyerman's report, his treating physician told Weyerman that he could return to "modified work/activity." The records further reflect that almost 1 week later, on October 2, Weyerman informed his treating physician that his symptoms had resolved and that he had been performing his regular work duties. The treating physician then released Weyerman from his care.

According to Weyerman and Lane, during the latter part of September 2015, Weyerman did return to work as a stagehand. However, Lane indicated that although Weyerman was working, he continued to complain that his back was hurting. Weyerman indicated to Lane that he really needed to work due to his financial situation, so Lane permitted Weyerman to do less physical jobs, including running a spotlight, handling lighting gear, and setting up for a ballet performance.

On October 9, 2015, a few days after Weyerman was released from his treating physician's care, Weyerman was working for Complete Payroll to set up for a concert. He was assigned to push boxes from a truck to the inside of the venue. Within 2 hours of beginning this work, Weyerman reported that he could not continue because of his back pain. He "couldn't even get up off [a] chair at that point." Weyerman reported his injury and sought medical treatment. October 9 is the last day that Weyerman worked as a stagehand.

On October 12, 2015, Weyerman was seen by a physician's assistant at a health clinic. The notes from this visit indicate

- 698 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
WEYERMAN v. FREEMAN EXPOSITIONS
Cite as 26 Neb. App. 692

that Weyerman reported that he injured his back 7 days prior to the visit, but he was "not sure" how he sustained the injury. A week later, on October 19, Weyerman saw his treating physician again. Weyerman reported that he was again experiencing back pain and was unable to perform his work duties. Ultimately, the treating physician prescribed pain medication for Weyerman and ordered a magnetic resonance imaging of his lower back. The treating physician indicated that Weyerman was not currently able to work.

The results of the magnetic resonance imaging revealed that Weyerman had multiple "disc bulge[s]" which were collectively referred to as "[m]ild to moderate multilevel lumbar spondylosis." On November 2, 2015, the treating physician released Weyerman to return to work with some restrictions; however, Weyerman did not return to work. In addition, the treating physician referred Weyerman to a spine and pain center and to a physical therapist.

Weyerman began seeing Dr. Liane Donovan at the spine and pain center on November 17, 2015. During Weyerman's treatment with Donovan, he received multiple epidural steroid injections and attended more than 20 physical therapy sessions. Weyerman reported that neither of these treatment options afforded him significant, long-term relief. In February 2016, Weyerman saw a surgeon, who was of the opinion that Weyerman had no "surgical options at this point." The surgeon noted that he was "unable to identify the source of [Weyerman's] symptoms[,] but he may have an annular tear in the lumbar spine."

On June 21, 2016, Donovan indicated her belief that Weyerman had reached MMI because he had "not responded to medication, injection therapy, [physical therapy,] and is not a surgical candidate." Donovan ordered a functional capacity evaluation (FCE) for Weyerman. Weyerman participated in the FCE on July 8, 2016. However, the results of the FCE were deemed "invalid" because the evaluator did not believe that Weyerman was accurately representing his abilities. Based on

- 699 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
WEYERMAN v. FREEMAN EXPOSITIONS
Cite as 26 Neb. App. 692

the invalid results of this FCE, Donovan released Weyerman from her care and indicated that he was capable of returning to work without any restrictions. Weyerman did not return to work as a stagehand.

### Compensation Court
#### Proceedings

Weyerman filed a petition in the compensation court alleging that he was injured on September 17, 2015, in the course of his employment with Freeman Expositions. He also alleged that he was injured on October 9, in the course of his employment with Complete Payroll.

A hearing was held on Weyerman's petition in January 2018. At the hearing, the parties presented evidence, including Weyerman's employment records; the collective bargaining agreements Local 42 had with Freeman Expositions and with Complete Payroll; Weyerman's medical records from his treating physician and Donovan; and depositions from Weyerman and officials from Local 42, Complete Payroll, and Freeman Expositions.

In addition to this evidence, Weyerman offered the results of an independent medical examination conducted on June 30, 2017. Dr. Matthew West, the independent medical examiner, opined that Weyerman had not yet reached MMI. He believed that there were still treatments available that had not been tried and that such treatments may help minimize Weyerman's symptoms and improve his overall function. He stated that it was "reasonable to anticipate future medical care that is related to the work injur[y]," including a referral to a pain clinic for medication management and chiropractic care. Essentially, he believed that Weyerman's condition could improve with continued care.

Weyerman also offered into evidence the results of a second FCE which had been conducted on September 20, 2016. There were no concerns with the validity of this FCE, because it was noted that Weyerman had given "Excellent Effort" during the

- 700 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
WEYERMAN v. FREEMAN EXPOSITIONS
Cite as 26 Neb. App. 692

evaluation. The results revealed that Weyerman is capable of working at the sedentary-light physical demand level for 8 hours per day.

Also admitted into evidence were multiple letters authored by Donovan, which were all in response to inquiries from the parties. The first letter, dated February 29, 2016, was sent in response to an inquiry of counsel for Freeman Expositions. It stated, in part:

It is my opinion that . . . Weyerman has not reached [MMI] pending completing of the physical therapy previously ordered. [MMI] will be attained six (6) weeks after completion of the course of physical therapy. Based on his response to that therapy we will make determination[s] regarding permanent impairment and permanent restrictions at that time.

The second letter authored by Donovan is dated a little more than 8 months later, November 16, 2016. In that letter, Donovan answers specific inquiries presented to her by Weyerman's counsel. Specifically, Donovan indicates that the work accident on September 17, 2015, "significantly contributed to . . . Weyerman's injury." She also opines that Weyerman reached MMI on July 19, 2016, and that, based upon the invalid results of the first FCE, Weyerman has not sustained any permanent impairment. Her review of the results of the second FCE did not change her opinion about any permanent impairment. Finally, Donovan indicated her belief that future medical care due to Weyerman's work injury is not expected.

Almost 1 year later, on September 7, 2017, Donovan authored a third letter. This letter is in response to questions posed by counsel for Complete Payroll. In this letter, Donovan opines that when Weyerman reported back pain on October 9, 2015, while working for Complete Payroll, that the pain constituted "a recurrence of his underlying lumbar complaints rather than a new and distinct injury."

Donovan's fourth letter, dated October 18, 2017, contradicts the September 7 letter. In the fourth letter, Donovan indicates

- 701 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
WEYERMAN v. FREEMAN EXPOSITIONS
Cite as 26 Neb. App. 692

that after authoring the September 7 letter, she was presented with evidence that Weyerman had returned to work without restrictions prior to the October 9, 2015, accident. Based on this evidence, Donovan indicated that she was now "unable, based on a reasonable degree of medical certainty, to opine as to whether . . . Weyerman's injuries and symptoms were caused solely by his September 17, 2015 or his October 9, 2015 accidents."

Donovan's last letter was dated January 15, 2018. In this letter she states:

> After reviewing new information regarding . . . Weyerman's records, including the deposition of . . . Lane, the business agent for the local union, as well as [Weyerman's] wage records, ongoing pain complaints, and work modifications, it is my opinion to a reasonable degree of medical certainty that . . . Weyerman's low back pain complaints in October were a recurrence of his underlying lumbar complaints rather than a new and distinct injury.

### Award

Following the January 2018 hearing, the compensation court issued a detailed award. In the award, the court found that Weyerman suffered an injury to his back while working for Freeman Expositions on September 17, 2015. The court further found that Weyerman suffered a recurrence of this injury while working on October 9. The court then specifically found that Freeman Expositions was liable for Weyerman's work-related injuries, because it was Weyerman's employer on September 17.

The court found that Weyerman had not yet reached MMI. As a result, it awarded Weyerman continuing temporary total disability payments in the amount of $376.71 per week. The compensation court also ordered Freeman Expositions to "pay for such future medical and hospital services and treatment as may be reasonably necessary as a result of" Weyerman's accident and the resulting injury.

- 702 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
WEYERMAN v. FREEMAN EXPOSITIONS
Cite as 26 Neb. App. 692

Freeman Expositions appeals from the compensation court's award.

## ASSIGNMENTS OF ERROR

On appeal, Freeman Expositions assigns five errors. Freeman Expositions argues, restated and reordered, that the compensation court erred first in determining that it was Weyerman's employer on September 17, 2015. Second, Freeman Expositions argues that the court erred in determining that Complete Payroll was not Weyerman's employer on October 9. Third, Freeman Expositions argues that the compensation court erred in finding that Weyerman did not suffer a new injury on October 9, but instead suffered a recurrence of his September 17 injury. Fourth, Freeman Expositions argues that the court erred in finding that Weyerman had not yet reached MMI and was, as a result, entitled to continuing temporary total disability payments. Finally, Freeman Expositions asserts that the court erred in ordering it to pay for Weyerman's future medical care.

## STANDARD OF REVIEW

[1] Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2016), an appellate court may modify, reverse, or set aside a compensation court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Hintz v. Farmers Co-op Assn.*, 297 Neb. 903, 902 N.W.2d 131 (2017).

[2,3] Findings of fact made by the compensation court have the same force and effect as a jury verdict and will not be set aside unless clearly erroneous. *Id*. When testing the sufficiency of the evidence to support findings of fact made by the compensation court trial judge, the evidence must be

- 703 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
WEYERMAN v. FREEMAN EXPOSITIONS
Cite as 26 Neb. App. 692

considered in the light most favorable to the successful party and the successful party will have the benefit of every inference reasonably deducible from the evidence. *Id.*

## ANALYSIS

### Weyerman's Employer on September 17, 2015

Freeman Expositions asserts that the compensation court erred in finding that it was Weyerman's employer on September 17, 2015, when he injured his back. Freeman Expositions argues that Weyerman has never been its employee. Instead, it argues that Weyerman is either an employee of Complete Payroll or an independent contractor. Upon our review, we conclude that there is sufficient, competent evidence in the record to support the compensation court's finding that Freeman Expositions was Weyerman's employer on September 17.

[4,5] There is no single test for determining whether one performs services for another as an employee or as an independent contractor, and the following factors must be considered: (1) the extent of control which, by the agreement, the employer may exercise over the details of the work; (2) whether the one employed is engaged in a distinct occupation or business; (3) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (4) the skill required in the particular occupation; (5) whether the employer or the one employed supplies the instrumentalities, tools, and the place of work for the person doing the work; (6) the length of time for which the one employed is engaged; (7) the method of payment, whether by the time or by the job; (8) whether the work is part of the regular business of the employer; (9) whether the parties believe they are creating an agency relationship; and (10) whether the employer is or is not in business. *Jacobson v. Shresta*, 21 Neb. App. 102, 838 N.W.2d 19 (2013). Ordinarily, when a court is presented with a dispute regarding a party's status as an employee or an independent

- 704 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
WEYERMAN v. FREEMAN EXPOSITIONS
Cite as 26 Neb. App. 692

contractor, the party's status is a question of fact which must be determined after consideration of all the evidence in the case. *Id*.

In the compensation court's analysis of whether Weyerman was an employee of Freeman Expositions, it focused first on the collective bargaining agreement entered into by Local 42 and Freeman Expositions. The court noted that in the agreement, Freeman Expositions is clearly referred to as the "employer." In addition, the compensation court found that pursuant to the terms of the agreement, Freeman Expositions retained a great deal of control over the work completed by union members. In fact, as we discussed in the background section of this opinion, the collective bargaining agreement includes the following provision regarding Freeman Expositions' "Management Rights":

> Subject to the provisions of this Agreement and applicable state and federal law, the Employer retains the sole right to manage its business and direct the working force including, but without being limited to, the right to establish new tasks, abolish or change existing tasks, increase or decrease the number of tasks, change materials, processes, products, equipment and operations. The Employer shall have the right to schedule and assign work to be performed, . . . establish, maintain and enforce reasonable plant rules and regulations, establish attendance policies and have the right to hire or rehire employees, promote employees, to demote or suspend, discipline or discharge for just cause, and to transfer or layoff employees because of lack of work.

Also during the course of its analysis about Weyerman's employment status, the compensation court discussed the deposition testimony of James Brackett, the director of operations for Freeman Expositions. In his testimony, Brackett indicated that Freeman Expositions supplies all of the work supplies, including tables, chairs, pipes, and drapes that union members use to set up the trade shows that they manage. Brackett also

- 705 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
WEYERMAN v. FREEMAN EXPOSITIONS
Cite as 26 Neb. App. 692

indicated during his testimony that a large part of Freeman Expositions' business involves coordinating trade shows.

In addition, the record reflects that Freeman Expositions pays union members directly for their work. Freeman Expositions also requires each union member to fill out new employee paperwork prior to beginning work for it and assigns each union member a unique employee number. Lane confirmed that Freeman Expositions manages union members who are working on Freeman Expositions' jobsites and controls the work that members complete. Both Lane and Weyerman testified that they considered Freeman Expositions to be the employer when union members worked on Freeman Expositions' jobsites.

We recognize that there is conflicting evidence in the record regarding Freeman Expositions' status as Weyerman's employer. The majority of this conflicting evidence comes from the deposition testimony of Brackett. Brackett testified that Freeman Expositions does not consider union members to be its employees. Instead, it considers union members to be employees of Local 42. Brackett also testified that the union maintained control over which workers were assigned to which task and supervised workers who were completing specific tasks. However, Brackett also indicated that the instructions for what tasks needed to be completed came directly from Freeman Expositions' employees.

[6] Because the compensation court explicitly found Freeman Expositions to be Weyerman's employer on September 17, 2015, it clearly found the evidence of Freeman Expositions' status as the employer to be more credible than Brackett's testimony to the contrary. And, as the trier of fact, the compensation court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. See *Swanson v. Park Place Automotive*, 267 Neb. 133, 672 N.W.2d 405 (2003). Given all of the evidence presented regarding Weyerman's employment status and given the compensation court's determination of credibility, we cannot say that

- 706 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
WEYERMAN v. FREEMAN EXPOSITIONS
Cite as 26 Neb. App. 692

the court erred in concluding that Freeman Expositions was Weyerman's employer on September 17. There was evidence that Freeman Expositions referred to itself as the "Employer" of union members in the collective bargaining agreement it signed with Local 42. Freeman Expositions required union members to fill out employment paperwork and chose to pay union members directly. In addition, there was evidence that Freeman Expositions supplied the necessary tools for union members to set up trade shows and also controlled the work of union members as they completed such work.

### Weyerman's Employer on October 9, 2015

Freeman Expositions also challenges the compensation court's determination that Complete Payroll was not Weyerman's employer on October 9, 2015, and the court's decision to dismiss Complete Payroll from the case. Upon our review, we agree with Freeman Expositions that the compensation court incorrectly determined that Complete Payroll was not Weyerman's employer on October 9. However, we also determine that the court's error is harmless.

In the award, the compensation court specifically found that "Complete Payroll Services was not [Weyerman's] employer on October 9, 2015, but, rather, an accounting service." This finding is not supported by the evidence presented at the hearing. At the hearing, the president of Complete Payroll specifically testified that in 2015, union members were considered the employees of Complete Payroll when members were working on Complete Payroll projects. Everyone who testified agreed that when Weyerman was working on October 9, he was working a Complete Payroll job, setting up for a concert. In fact, the president of Complete Payroll testified that Weyerman was a Complete Payroll employee on October 9. We further note that Complete Payroll has admitted in its brief on appeal that it was Weyerman's employer on October 9. Based on the evidence admitted at trial, the compensation court erred in

- 707 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
WEYERMAN v. FREEMAN EXPOSITIONS
Cite as 26 Neb. App. 692

finding that Complete Payroll was not Weyerman's employer on October 9.

However, the court's finding that Complete Payroll was not Weyerman's employer on October 9, 2015, constitutes harmless error. As we discuss in detail in the next section, the compensation court found that Weyerman's October 9 injury was a recurrence of the September 17 injury and that, as a result, Freeman Expositions was liable for the injury. We affirm the compensation court's finding. Because we affirm this finding, the identity of Weyerman's employer on October 9 is irrelevant to his workers' compensation claim. Furthermore, because Complete Payroll was not Weyerman's employer on the date of his injury, the compensation court did not err in dismissing Complete Payroll from the case.

### Injury on October 9, 2015, Was Recurrence of September 17 Injury

Freeman Expositions asserts that the compensation court erred in determining that Weyerman's back pain on October 9, 2015, was a recurrence of the September 17 back injury, rather than a new and distinct injury. Freeman Expositions' argument appears to be based on its contention that if the October 9 injury was a new and distinct injury, then Complete Payroll, as Weyerman's employer on that day, would be liable to Weyerman instead of Freeman Expositions. Upon our review, we conclude that there is sufficient, competent evidence in the record to support the compensation court's finding that the October 9 injury was a recurrence of the September 17 injury.

[7,8] When a subsequent injury aggravates a prior injury, the insurer at risk at the time of the subsequent injury is liable. *Miller v. Commercial Contractors Equip.*, 14 Neb. App. 606, 711 N.W.2d 893 (2006). But, if the subsequent injury is a recurrence of the prior injury, the insurer at risk at the time of the prior injury is liable. *Id*. A finding in regard to causation

- 708 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
WEYERMAN v. FREEMAN EXPOSITIONS
Cite as 26 Neb. App. 692

of an injury is one for determination by the compensation court as the finder of fact. *Id*.

In its award, the compensation court specifically found that Weyerman's accident on September 17, 2015, was the cause of his back injury and that Weyerman's back pain on October 9 was a recurrence of the original injury suffered on September 17. In making this finding, the court cited to evidence in the record which indicated that Weyerman did not ever fully recover from the back injury he suffered on September 17. Such evidence included Weyerman's testimony that he never improved after the September 17 injury and Lane's testimony that even though Weyerman returned to work as a stagehand after September 17, he continued to complain about back pain and continued to only be able to complete tasks that were considered light duty. Lane testified that Weyerman told him that he needed to work, despite his back pain, due to financial reasons and that Local 42 accommodated Weyerman's request.

There was conflicting evidence presented which suggested that Weyerman had fully recovered from the September 17, 2015, injury. This evidence included medical records from his treating physician, which indicated that Weyerman reported that about 1 week after the September 17 injury, his symptoms were improving, and that 2 weeks after the injury, his symptoms had completely resolved and he was completing his regular duties at work. As a result of Weyerman's reports, the treating physician believed that Weyerman had reached MMI by October 2. The treating physician released Weyerman to return to work. In addition, in medical records from a health clinic where Weyerman was seen after experiencing increased back pain on October 9, it is indicated that Weyerman reported that he injured his back 7 days prior to his appointment and that he was "not sure" how he injured himself.

In the award, the compensation court specifically found that Weyerman's testimony regarding the continuing pain caused

- 709 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
WEYERMAN v. FREEMAN EXPOSITIONS
Cite as 26 Neb. App. 692

by the September 17, 2015, injury was credible. The court indicated that it did not believe that Weyerman was fully healed by October 2 and ready to return to work. As we stated above, as the trier of fact, the compensation court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Swanson v. Park Place Automotive*, 267 Neb. 133, 672 N.W.2d 405 (2003).

[9] We also note that Donovan provided multiple opinions regarding whether the October 9, 2015, injury was a recurrence of the September 17 injury or a new injury. However, the compensation court ultimately adopted "Donovan's medical opinion that the accident of September 17, 2015, was the cause of [Weyerman's] complaints and the Court finds anything after that date was recurrent to September 17, 2015." Resolving conflicts within a health care provider's opinion rests with the compensation court, as the trier of fact. *Damme v. Pike Enters.*, 289 Neb. 620, 856 N.W.2d 422 (2014).

Given the compensation court's determinations about credibility and given that there was competent evidence to support the court's decision that the October 9, 2015, injury was a recurrence of the September 17 injury, we must affirm the decision of the compensation court.

## MMI

Freeman Expositions also asserts that the compensation court erred in determining that Weyerman has not yet reached MMI and that, as a result, he is entitled to continuing temporary disability payments. Specifically, Freeman Expositions argues that there was no medical opinion to support the compensation court's finding regarding MMI and that the majority of the evidence, including Weyerman's own testimony, supports a determination that Weyerman has reached MMI. Upon our review, we conclude that there is sufficient, competent evidence in the record to support the compensation court's finding that Weyerman had not reached MMI by the time of the hearing.

- 710 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
WEYERMAN v. FREEMAN EXPOSITIONS
Cite as 26 Neb. App. 692

[10] Under Neb. Rev. Stat. § 48-121 (Reissue 2010), a workers' compensation claimant may receive permanent or temporary workers' compensation benefits for either partial or total disability. "Temporary" and "permanent" refer to the duration of disability, while "total" and "partial" refer to the degree or extent of the diminished employability or loss of earning capacity. *Rodriguez v. Hirschbach Motor Lines*, 270 Neb. 757, 707 N.W.2d 232 (2005). Temporary disability ordinarily continues until the claimant is restored so far as the permanent character of his or her injuries will permit. *Id*. Compensation for temporary disability ceases as soon as the extent of the claimant's permanent disability is ascertained. *Id*. In other words, temporary disability should be paid only to the time when it becomes apparent that the employee will get no better or no worse because of the injury. *Id*.

[11,12] The term "maximum medical improvement" has been used to describe the point of transition from temporary to permanent disability. See *id*. Once a worker has reached MMI from a disabling injury and the worker's permanent disability and concomitant decreased earning capacity have been determined, an award of permanent disability is appropriate. *Id*. Generally, whether a workers' compensation claimant has reached MMI is a question of fact. *Id*.

Contrary to Freeman Expositions' assertions on appeal, there is medical evidence to support the compensation court's finding that Weyerman has not yet reached MMI. The independent medical examiner conducted an evaluation of Weyerman in June 2017, about 6 months prior to the hearing. After the evaluation, he authored a report which reflected his opinion that Weyerman had not yet reached MMI. The independent medical examiner believed that there were still treatments available to try which may help minimize Weyerman's pain and improve his overall function. Such treatments included referrals to a pain management clinic and to a chiropractor. There is nothing in our record to indicate that Weyerman was able to try these treatments prior to the hearing date.

- 711 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
WEYERMAN v. FREEMAN EXPOSITIONS
Cite as 26 Neb. App. 692

We recognize that Donovan provided conflicting medical opinions about MMI. Donovan opined that Weyerman had reached MMI in June 2016, 1 year prior to Weyerman's evaluation with the independent medical examiner. Donovan based her medical opinion on Weyerman's failure to improve after receiving pain medication, injection therapy, and physical therapy. In addition, Donovan noted that Weyerman was not a good candidate for surgery.

[13] However, as we stated above, the compensation court is the sole judge of the credibility and weight to be given medical opinions, even when the health care providers do not give live testimony. *Damme v. Pike Enters.*, 289 Neb. 620, 856 N.W.2d 422 (2014). When the record presents nothing more than conflicting medical testimony, an appellate court will not substitute its judgment for that of the compensation court. *Id*.

Because the compensation court determined that Weyerman had not yet reached MMI, it clearly found the independent medical examiner's medical opinion to be more credible than Donovan's opinion. And, because the compensation court is the sole judge of the credibility of medical opinions and there was sufficient, competent evidence to support the compensation court's finding, we cannot find clear error in the court's determination that Weyerman had not reached MMI at the time of the hearing.

### Future Medical Care

Freeman Expositions asserts that the compensation court erred in awarding Weyerman future medical expenses. Specifically, Freeman Expositions argues that none of the medical providers who examined Weyerman recommended future medical care. Upon our review, we conclude that there is sufficient, competent evidence in the record to support the compensation court's award of future medical expenses.

In the award, the compensation court stated:

> The medical evidence from the physicians in this case are that [Weyerman] will require future medical and

- 712 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
WEYERMAN v. FREEMAN EXPOSITIONS
Cite as 26 Neb. App. 692

hospital services and that [Freeman Expositions] should continue to provide and pay for such future medical and hospital services and treatment as may be reasonably necessary as a result of the said accident and injury of September 17, 2015.

The report authored by the independent medical examiner supports the compensation court's award of future medical expenses. He opined that Weyerman had not reached MMI yet because there were still treatments available to try which may help to improve Weyerman's pain and overall functioning. In addition, he opined that it is "reasonable to anticipate future medical care that is related to the work injur[y]." Such medical care was to include medication management through a pain clinic and chiropractic care. Essentially, he expressed optimism that, with additional medical treatment, Weyerman's condition would improve.

Given the independent medical examiner's opinion that Weyerman's condition could improve with further medical treatment, the compensation court did not err in ordering Freeman Expositions to pay for any future medical treatment related to Weyerman's back injury.

## CONCLUSION

We affirm the award entered by the compensation court which found that Weyerman had not yet reached MMI and which ordered Freeman Expositions, as Weyerman's employer on September 17, 2015, to pay to Weyerman temporary total disability payments and future medical expenses.

Affirmed.